## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. JOHNS.　(No. 9552.)*

(Court of Civil Appeals of Texas. Dallas. May 29, 1926. Rehearing Denied July 3, 1926.)

1. **Master and servant** ⬩⟳217(1)—Locomotive inspector, unscrewing boiler plug, held to assume risk 'of injury by wrench slipping (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).

Locomotive inspector *held* to assume risk of injury as result of wrench slipping off plug in boiler, when plug broke while being unscrewed, where he applied strength which in his judgment was necessary, and cannot recover under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), though railroad was negligent.

2. **Master and servant** ⬩⟳129(5)—Railroad's negligence in permitting threads on boiler plug to become rusty held not proximate cause of injury to inspector whose wrench slipped.

Railroad's negligence in permitting threads on plug in locomotive boiler to become rusty, so that it was difficult to remove, *held* not proximate cause of injury to locomotive inspector, whose wrench slipped off plug when he applied strength which in his judgment was necessary to remove it.

Appeal from District Court, Hunt County; Geo. B. Hall, Judge.

Action by Jacob E. Johns against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Crosby & Estes, of Greenville, and E. B. Perkins, of Dallas, for appellant.

Harrell & Starnes, and James & Evans, all of Greenville, for appellee.

LOONEY, J. This suit was instituted by appellee against appellant to recover damages for personal injuries, and is controlled by the provisions of the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

Appellee, a boiler maker of over 40 years' experience, was an employé of appellant in that capacity, prior to his injury, 26 years in its shops at Commerce, Tex., and for 5 or 6 years had been serving also as inspector of locomotives. It was his duty, among others, to wash boilers of locomotives or have the work done under his supervision, and, for that purpose, was furnished a negro helper. A boiler is prepared for washing by removing certain plugs that screw in from the outside, the nozzle of a hose is then inserted, water is turned on, and, after the boiler is washed out, the plugs are oiled and replaced. These plugs are of brass, with square heads, on which a wrench fits to screw in or off, as the occasion demands. It often occurred that the negro helper had trouble in getting plugs out, and, in such event, he would call appellee, whose duty it was to remove them.

On the occasion in question, while appellee was engaged at work on another engine, this negro helper requested him to remove a plug from a boiler they were preparing to wash. Appellee secured a large wrench, weighing from 20 to 25 pounds, placed it on the head of the plug to be removed, and, in attempting to unscrew the same, broke or twisted off a part of its head, causing the wrench to suddenly slip off and fall with violence over his shoulder, severely injuring the muscles of his right arm and shoulder.

The negligence alleged by appellee is as follows:

"Plaintiff charges and alleges the fact to be that the defendant had neglected and carelessly failed to take out said plug from said boiler for a long time prior to .said date, and that, on account of said failure, the screws and grooves of said plug had become corroded, rusted, and hardened to that extent that it was impossible, by the use of the wrench, to unscrew and take out the bolt from the boiler, and plaintiff shows that with such failure and neglect it rendered the premises where the plaintiff undertook to do and perform his work dangerous and hazardous, * * * and that the negligence and carelessness of the defendant, as above set forth, was a direct and proximate cause of the injuries to plaintiff as above set forth."

The cause went to the jury on a general charge, resulting in a verdict for appellee in the sum of $7,500, in accordance with which judgment was rendered against appellant, from which this appeal is prosecuted.

[1] Only one question will be discussed; that is, appellant's assignment of error on the refusal of the court to instruct a verdict in its favor, on the ground that appellee assumed the risk incident to the performance of the work in the manner chosen by him, and that his own acts were the sole proximate cause of his injury.

The case must stand or fall on the testimony of appellee, who, in describing how he was injured, said:

"I was injured there in that shoulder by pulling with the wrench and cutting off that plug there, that screw on the plug. * * * Yes; I had used that wrench hundreds of times before this, and it had slipped off before. All of them will do that. * * * On this occasion I made a good pull on the wrench, and it slipped off. I don't suppose it would have ever slipped off if the plug hadn't given way. The plug gave way; the wrench didn't. * * * My wrench slipped off that plug, which was caused by that square twisting over. I couldn't tell what caused it to twist over only I was either too strong for it or that was so weak it would not stand the pressure. * * * That plug was brass, the wrench twisted right around on this square. I pulled pretty good, I am a pretty good puller with the wrench. Yes; I pulled hard enough to twist that corner off. I did it pulling; it wouldn't come no other way."

Appellee made no contention that either the bolt or the wrench was defective, negligence being based alone on the idea that appellant failed for a long time to remove the plug, and that its threads had become rusted and hardened, rendering it difficult to remove. Thus the case presented is this: Appellee, a man of unusual experience, in complete control of the work to be done, with knowledge that the plug for some reason was stubborn and difficult of removal, applied the degree of strength which in his judgment was necessary, and, in doing so, broke or twisted off a part of its head, dislodging the wrench, and causing the injury.

The case, in our opinion, is clearly within the rule announced in 39 C. J. 766, § 965, as follows:

"A servant assumes the risk of physical injury to himself, sustained by reason of his overtaxing his strength or powers of endurance in doing the work for which he is employed, when the occasion presents no emergency requiring hasty action."

[2] It may be conceded that appellant was guilty of negligence in the respect alleged—that is, by permitting the threads of the bolt to become rusty, hardened, and difficult to remove—but that was not the proximate cause of the injury; rather it created the condition upon which appellee operated. Houston & T. C. Ry. Co. v. Maxwell, 61 Tex. Civ. App. 80, 128 S. W. 163; 21 Ency. of Law, 495. Appellee, as his own master, was at liberty to, and did, uncontrolled by the will of another, put forth more or less effort to unloose the plug as he thought necessary, and, in doing so, assumed the risk incident to the performance.

The rule announced in 39 C. J., supra, was applied by the Texarkana Court of Civil Appeals in Hines v. Ross, 230 S. W. 1066. The court said:

"Conceding that the ash pan was out of order because of a negligent failure on the part

of the plaintiff in error to have it repaired, that condition created no menace to the safety of the employé. He was not required to do this work alone. He voluntarily made the attempt on this occasion to do it without help. Even if he did not previously know of the condition of the ash pan, he could have ascertained that it was difficult to close merely by lifting in moderation. He was neither directed nor expected to overexert himself. No one could gauge his strength so well as himself. It is evident that the injury to defendant in error resulted, not from any negligence on the part of the railway company, but from the voluntary overexertion of his own strength."

The reason for this rule, as generally assigned, is that every man of ordinary intelligence is presumed to be the best judge of his own strength. Appellee was a vice principal in full control, was the best and in fact the only judge as to the amount of force that should be applied to the wrench in order to remove the plug, and unquestionably he must be held to have assumed the risk incident to the operation. 39 C. J. 766, note 46.

The case will be reversed because the trial court erred in refusing to instruct a verdict for appellant, and, as the record fails to disclose any reason why it should be remanded, judgment will be rendered for appellant.

Reversed and rendered. .