
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-12-722

| | |
|---|---|
| COURTNEY M. WOODS<br>APPELLANT | Opinion Delivered August 28, 2013 |
| V. | APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23DR-11-746] |
| JOSH E. WOODS<br>APPELLEE | HONORABLE CHARLES E.<br>CLAWSON, JR., JUDGE |
| | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Courtney Woods appeals from a divorce decree in which the Faulkner County Circuit Court granted custody of the couple's child to the father, appellee Josh Woods. We find no error and affirm.

Courtney and Josh were married in 2007 and had one son, K.W., who was born in 2008. Josh was employed by the Maumelle Fire Department and the Sherwood Fire Department, working twenty-four hours at one fire department, followed by twenty-four hours at the other, with every third day off. Courtney was in her final year at the University of Central Arkansas, pursuing a teaching degree, and worked at the day care in which K.W. was enrolled.

The parties separated in 2011 as a result of Courtney's extramarital affair. Josh remained in the marital home, and Courtney moved in with her parents. Josh filed for divorce in June 2011, alleging general indignities. In the divorce decree, the Faulkner County Circuit Court found that both parties were fit to have custody, and it noted that both parties had complicated work schedules. The court granted custody to Josh and ordered Courtney to pay child support. Courtney filed a timely notice of appeal and now raises three arguments for reversal, contending that the circuit court erred in 1) sustaining an objection to one of her questions posed to Josh, 2) awarding custody of K.W. to Josh, and 3) not awarding her alimony.

In her first argument, Courtney argues that the circuit court erred in refusing to allow her to elicit testimony that Josh was not present at K.W.'s birth. Josh testified on cross-examination that K.W.'s delivery was a scheduled induction. Courtney's attorney asked whether Josh took Courtney to the hospital that day, and Josh's attorney objected as to relevancy. The court sustained the objection, saying the child had been born nearly four years earlier.

Courtney argues that this ruling was error and that she should have been permitted to pursue this line of questioning. She contends that this testimony was relevant to show that Josh's job as a firefighter, rather than his family, was his "top priority" and had "significantly interfered with the family dynamics." She further claims that it was "very relevant" as to Josh's character "if he could not even take off work for the birth of his own child when he knew

SLIP OPINION

exactly when that induction was scheduled." Josh responds that the circuit court did not abuse its discretion by refusing to allow the testimony, contending that the issue of whether he was present at his child's birth is "simply not relevant as to whether he was worthy of custody of his child."[1]

Our standard of review for evidentiary rulings is well settled. The trial court makes the determination as to the admissibility of testimony. *Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004). The trial court must determine the relevancy, competency, and probative value of the testimony. *Id*. The admissibility of testimony is within the trial court's discretion, and the trial court will not be reversed absent an abuse of that discretion. *Id*.

We cannot conclude that the circuit court abused its discretion. There was abundant testimony regarding Josh's work schedule and how much time he was required to spend at the fire station. For example, Josh testified that when he and Courtney first got married, he told her that he would continue working two jobs to support her and their son. He worked a twenty-four hour shift with one fire department, another twenty-four hour shift at the other fire department, and then had twenty-four hours off. He described his work schedule in detail, introducing an exhibit that showed how his jobs and days off rotated. Given the extensive testimony about Josh's current and future schedule, the circuit court did not abuse

---

[1] Josh also raises an argument that Courtney's argument is not preserved for appeal because she did not make a proffer of the testimony that she argues on appeal should have been admitted. We disagree. In order to challenge a ruling that excludes evidence, an appellant must proffer the excluded evidence so that we can review the trial court's decision, unless the substance of the evidence is apparent from the context. *Kofler v. Kofler*, 2009 Ark. App. 202. Here, it was apparent from the context that Courtney was anticipating that Josh would say "no" when asked if he was there for their child's birth. As such, we conclude that the argument is preserved.



its discretion in declining to consider testimony about past events.

In her second argument, Courtney contends that the circuit court erred in awarding custody of K.W. to Josh. In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Magee v. Magee*, 2013 Ark. App. 108; *Wingfield v. Wingfield*, 2009 Ark. App. 393. A finding is clearly against the preponderance of the evidence when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Magee, supra*. We also give special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases. *Id*. We know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Id*. In custody cases, the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *Id*.

Courtney argues that the circuit court improperly based its decision to award custody to Josh "upon speculation of future events regarding employment of the parties, rather than focusing on the other factors before the court, both past and present." The crux of her argument is that she feels the circuit court hinged its decision on Josh's testimony that, if awarded custody, he would quit one of his jobs so that he could spend more time with K.W. Citing *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), Courtney asserts that the court erred in basing its decision on "potential actions and events" and that it should have considered other factors that this court has held are relevant in making child-custody

SLIP OPINION

determinations.

Courtney's reliance on *Taylor* is misplaced. First, *Taylor* was a modification-of-custody case; in such cases, the circuit court must consider whether there has been a material change in circumstances that demonstrates that a modification of the decree is in the best interest of the child. *Taylor*, 353 Ark. at 78, 110 S.W.3d at 736. The court there found a material change of circumstances existed because the mother was in a same-sex relationship and the court "concluded that the public's assumptions 'would subject the children to ridicule and embarrassment and could very well be harmful to them.'" *Id*. at 80, 110 S.W.3d at 737. The court made no finding, however, that the children had in fact been harmed or affected by their mother's behavior or relationship. *Id*. The supreme court therefore held that there was insufficient proof of a material change in circumstances solely based on the fear of speculative future harm to the children.

Moreover, the facts of this case are distinguishable. In reaching its best-interest conclusion, the court considered several factors. First, the circuit court considered the suitability of both parties and found that either Josh or Courtney was a proper person to have custody of K.W. Second, the court noted that both parties contributed to the downfall of the relationship—Josh by working two jobs and Courtney by "[taking] advantage of the opportunity of his absence [to] engage[ ] in a relationship with another person"—but the end result was the termination of the marriage. Third, the court considered that K.W. was in day care in Mayflower and that the parties agreed for him to attend school within that district. Lastly, the court considered the employment of the parties. The focus of this factor was the

SLIP OPINION

stability of the parties and the effect of the parties' employment upon the child. The court appreciated that Courtney would soon obtain a degree and would be in a position to seek employment at a public school in the area. The court noted, however, if Courtney got a teaching position, it could conflict with K.W.'s school schedule. She might not find work in Mayflower, and she had applied for teaching positions in school districts "which are a number of miles away which would create a difficult situation to allow the child to attend school at Mayflower as seems to be the plan." Pertaining to Josh's work schedule, the court lauded his plan to change his schedule so that he would be at work for twenty-four hours and then off for forty-eight, but it acknowledged that the change in Josh's schedule was "not going to be a particular value to the child in that he will be in school all day." The court also noted that Josh's work schedule "could complicate a standard weekend visitation process."

The court was confronted with two parents who obviously cared equally for the well-being of their son. Josh had a stable job, albeit with unusual hours, while Courtney had not yet found employment utilizing her degree, although she had prospects for such a position. On the whole, we conclude that the circuit court was in the best position to evaluate these matters and make a credibility determination. *See Tanner v. Kadusheva*, 2011 Ark. App. 379, 389 S.W.3d 635 (affirming where the circuit court evaluated the parties and their testimony and made a determination that it was in the child's best interest to be placed with the mother, who was a "loving parent who is able to provide for her child," and the father "simply has not shown that these findings are clearly erroneous."). Considering everything before it, the court concluded that Josh should have primary physical custody. On days when Josh was required



to report for his employment, Courtney was to be given the first opportunity to keep K.W. Regardless of any visitation she might have during the week, the court ordered that Courtney would have K.W. every other weekend. We cannot say that the court was clearly erroneous in its conclusion.

Courtney also argues that the circuit court should have considered and given more weight to other factors in reaching its child-custody determination, such as who had been the primary caretaker, which parent was more able to provide a stable environment, and which parent would be more likely to allow the child to have frequent and continuing contact with the noncustodial parent. *See, e.g.*, *Bamburg v. Bamburg*, 2011 Ark. App. 546, 386 S.W.3d 31. Courtney does not complain that the court failed to make specific findings; rather, her argument is that "the court should have given more weight to [these] factors." Nothing in the statute governing the award of child custody, Arkansas Code Annotated section 9-13-101 (Supp. 2011), requires the circuit court to make specific findings as to every factor that leads to the court's best-interest determination. Moreover, the mere fact that the court did not mention these other factors in its letter opinion or divorce decree does not necessarily mean that no consideration was given to them. *See Legate v. Passmore*, 268 Ark. 1161, 1162, 599 S.W.2d 151, 152 (Ark. App. 1980) (circuit court's remarks from the bench at the conclusion of trial were "not intended . . . to encompass all his findings and conclusions of law," and the court did not "feel his statement should be held to have been exclusive of other legal conclusions he might have reached in determining his verdict and judgment.").

We do not address Courtney's arguments about these factors, as the circuit court made

7

no explicit findings on them, and Courtney did not ask for additional findings. In *Erickson v. Erickson*, 2010 Ark. App. 302, this court declined to reach an argument that the circuit court failed to make specific findings of fact regarding its determination that a material change in circumstances had occurred that warranted a change of custody. This court noted that appellant did not request specific findings of fact, although he had the right and opportunity to do so under Arkansas Rule of Civil Procedure 52. *Erickson*, 2010 Ark. App. 302, at 5. Because Courtney did not request specific additional findings, her arguments are not properly before us.

Finally, Courtney argues that the circuit court erred in not granting her spousal support. We do not reach this argument because the issue is not preserved for appeal. Courtney sought an award of alimony in her counterclaim for divorce, and her attorney made a request for alimony during closing arguments at the trial in circuit court. The circuit court, however, made no mention whatsoever of spousal support in either its comments from the bench, its letter opinion, or the divorce decree.

In order to preserve an issue for appellate review, Courtney was obligated to obtain a specific ruling on it from the trial court. The appellate courts will not review a matter on which the trial court has not ruled, and a ruling should not be presumed. *Stilley v. Univ. of Ark. at Ft. Smith*, 374 Ark. 248, 287 S.W.3d 544 (2008); *Long v. Simpson*, 2009 Ark. App. 488. Moreover, the burden of obtaining a ruling is on the movant; objections and matters left unresolved are waived and may not be relied upon on appeal. *Reed v. Guard*, 374 Ark. 1, 285 S.W.3d 662 (2008); *Camden Cmty. Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999);

*McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). Because the trial court never rendered a ruling on the question of alimony, this court cannot address it on appeal.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Davidson Law Firm*, by: *Molly E. Lucas*, for appellant.

*Debra J. Reece*, for appellee.